## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

**BRANDI HUBBARD,**
**SHERLYN HUFFMAN,**
**REBECCA BEAVER** and
**HOLLY JIMENEZ**, Individually,
and on behalf of others similarly situated,

|  |  |
|---|---|
| Plaintiffs, | Case No. _____ |
| v. | |
| | **RULE 23 CLASS ACTION AND** |
| **DOLGENCORP, LLC,** | **FLSA COLLECTIVE ACTION** |
| **DOLLAR GENRAL CORP.,** and | |
| **DG RETAIL, LLC.** | **JURY TRIAL DEMANDED** |
| Defendants, | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Brandi Hubbard, Sherlyn Huffman, Rebecca Beaver and Holly Jimenez (herein collectively "Plaintiffs"), on behalf of themselves, individually and on behalf of themselves and others similarly situated as a class, file this Class and Collective Action Complaint, averring as follows:

### INTRODUCTION

1. This is a collective action for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (FLSA) and brought on behalf of all current and former FLSA non-exempt Key-Holders (Assistant Store Managers and Lead Sales Associates) of Dollar General Corporation, Dolgencorp, LLC and DG Retail, LLC (herein "Dollar General") for "off-the-clock" unpaid straight time, minimum wage and overtime compensation against Dollar General. Plaintiffs seek to recover unpaid wages owed to them and all other similarly situated Key-Holders (also known as Key Carriers) who have worked at Dollar

1

General Retail Stores, nationwide, at any time within the three (3) years preceding the filing of this lawsuit. Plaintiffs and class members' "off the clock" claims are unified through a common theory of FLSA violations. Plaintiffs also bring supplemental state-law claims to recover broader remedies unavailable in FLSA actions and will seek to certify those state-law claims pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). It is well-settled in this jurisdiction that Rule 23 class actions can be combined (i.e., coexist) with collective actions brought under the FLSA. *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-79 (7thCir. 2011).

2. Plaintiffs Hubbard and Huffman also assert individual and class claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*., and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq*., to recover unpaid minimum wages and overtime compensation for Plaintiffs and other similarly situated employees under Illinois law against Dollar General pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs Hubbard and Huffman assert these individual and class claims for unpaid wages on behalf of themselves and all members of the Illinois Class as defined below.

3. Plaintiffs Beaver and Jimenez also assert individual and class claims for unjust enrichment and breach of contract under Tennessee law against Dollar General pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs Beaver and Jimenez assert these individual and class claims for unpaid wages on behalf of themselves and all members of the Tennessee Class as defined below.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action under 29 U.S.C. §§ 201, *et seq.,* 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5. This Court also has federal jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because this is a class action in which: (1) there are more than 100 class members in Plaintiffs' proposed classes; (2) Plaintiffs and members of the proposed classes have different citizenships from Defendants (i.e., the parties are minimally diverse); and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 552 (2014), citing 28 U.S.C. 1332(d)(1)(2), (5)(B). In addition, this Court has supplemental jurisdiction over Plaintiffs' state-law claims because those claims derive from the same common conduct that led to violations of the FLSA; that is, the FLSA and state-law claims all derive from the same common nucleus of operative facts. 28 U.S.C. § 1367. In other words, state-law claims are so related to the FLSA claims that they form part of the same controversy.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiffs Hubbard and Huffman reside in this district, were employed by Dollar General to perform work in this District and Dollar General has conducted business within this District at all relevant periods to this action. In addition, a substantial part of the events, commissions, inactions and omissions giving rise to these claims and this action occurred within this District.

## PARTIES

7. Plaintiff Brandi Hubbard is a resident of Illinois and this District and worked as a non-exempt Key-Holder (Lead Sales Associate) at a Dollar General store within this District

during the three-year period immediately preceding the filing of this Complaint. Plaintiff Hubbard's Consent to Join this collective action is attached hereto as Exhibit A.

8. Plaintiff Sherlyn Huffman is a resident of Illinois and this District and worked as a non-exempt Key-Holder (Assistant Store Manager) at a Dollar General store within this District during the three-year period immediately preceding the filing of this Complaint. Plaintiff Huffman's Consent to Join this collective action is attached hereto as Exhibit B.

9. Plaintiff Rebecca Beaver was a resident of Tennessee and worked as a non-exempt Key-Holder (Assistant Store Manager) at a Dollar General store during the three-year period immediately preceding the filing of this Complaint. Plaintiff Beaver's Consent to Join this collective action is attached hereto as Exhibit C.

10. Plaintiff Holly Jimenez was a resident of Tennessee and worked as a non-exempt Key-Holder (Lead Sales Associate) at a Dollar General store during the three-year period immediately preceding the filing of this Complaint. Plaintiff Jimenez's Consent to Join this collective action is attached hereto as Exhibit D.

11. Plaintiffs Beaver and Jimenez originally filed this action in the United States District Court for the Western District of Tennessee and have voluntarily dismissed the Tennessee action without prejudice. Opt-In Plaintiffs' Consents to Join this collective action are attached hereto as Collective Exhibit E.

12. Plaintiffs and Opt-In Plaintiffs were "employees" as defined by the FLSA, who worked as FLSA non-exempt Key-Holder employees of Dollar General during all relevant periods herein.

13. Defendant Dollar General Corporation is a Tennessee Corporation that does business as "Dollar General" and is headquartered in Goodlettsville, Tennessee. Dollar General

claims to be the largest discount retailer in the United States, with more than 12,500 stores scattered throughout the nation. According to Dollar General's most recent 10-K, as of February 26, 2016, Dollar General operated 12,575 retail stores located in 43 states including Illinois. Dollar General is a publicly traded Fortune 150 company with 20.369 Billion dollars in net sales in 2015. Upon information and belief, Dollar General does business as and is incorporated in Illinois as DG Retail, LLC (a wholly owned subsidiary of Dollar General Corporation). DG Retail, LLC's File Detail Report from the Illinois Secretary of State is attached hereto as Exhibit F. Dollar General's principal address is located at 100 Mission Ridge, Goodlettsville, Tennessee 37072-2171. DG Retail, LLC's principal address, unsurprisingly, is also located at 100 Mission Ridge, Goodlettsville, Tennessee 37072. DG Retail, LLC's active assumed name according to the Illinois Secretary of State is Dollar General. Dollar General can be served process via its registered agent: Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312. DG Retail, LLC can be served process via its registered agent: Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

14. Defendant Dolgencorp, LLC, upon information and belief, is a wholly owned subsidiary of Dollar General Corporation. Dolgencorp, LLC is a Kentucky Limited Liability Company with its principal office located at 100 Mission Ridge, Goodlettsville, Tennessee 37072-2171. Dolgencorp, LLC can be served through its register agent: Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

15. Defendants constitute an integrated enterprise because Defendants' related activities (i.e. jointly owning and operating Dollar General retail stores) performed (either through

unified operation or common control) by any person or persons [are] for a common business purpose as that term is defined in the FLSA, 29 U.S.C. § 203(r).

## FACTUAL BASIS FOR SUIT

16. Plaintiffs are former non-exempt Key-Holders (Assistant Store Managers and Lead Sales Associates, respectively) for Dollar General within the three (3) year period preceding the filing of this action. As non-exempt Key-Holders they possessed control over keys that opened the Dollar General store at which they worked and its cash registers during all relevant periods. Also, as non-exempt Key-Holders for Dollar General during such time, their regular job duties consisted of serving as Managers on Duty which required them to be in charge of the store(s) at which they worked and responsible for the store's operations during their entire scheduled shifts.

17. Plaintiffs and other similarly situated Key-Holders ("class members") were subject to Dollar General's common timekeeping, payroll and operational plans, policies and practices at all times relevant to this action.

18. Dollar General maintained a common pattern and practice of allowing, inducing and incentivizing its store managers to require, force, expect, encourage and/or suffer and permit Plaintiffs and class members to work "off-the-clock" before, during and after their scheduled shifts to avoid compensating them for all straight time worked, to avoid compensating them for all hours worked in excess of forty (40) per week at the applicable FLSA overtime compensation rate of pay, to enable it to "under-budget" its labor costs and to "under-staff" its stores (but nonetheless meet the operational needs its store), all for the purpose and objective of staying within its budgeted labor cost allotted to each of its stores.

19. Dollar General has induced and incentivized its store managers to work non-exempt Key-Holders, such as Plaintiffs and class members, "off-the-clock" (as described in paragraph 21 below), for the purpose and objective of staying within its budgeted labor costs allotted to each of its stores, by providing such store managers special "recognition" if they stay within their allotted budgeted labor costs, on the one hand and, by adversely impacting their employment if they fail to stay within their allotted budgeted labor costs, on the other hand.

**"Off-The-Clock" Work Time**

20. Plaintiffs and class members worked "off-the-clock" before, during and after their regularly scheduled hours while employed as non-exempt Key-Holders of Dollar General without being compensated at the applicable straight time, minimum wage and overtime compensation rates of pay for such "off-the-clock" work, as required by the FLSA and under Illinois and Tennessee laws. As a result of such failure, Dollar General violated the provisions of the FLSA and state law.

21. Some of such uncompensated "off-the-clock" work performed by Plaintiffs and class members, as non-exempt Key-Holders, before, during and after their regularly scheduled shifts consisted of:

    (a)    Being required, forced, induced, expected, encouraged, suffered and/or permitted to perform integral and indispensable pre-store opening duties before clocking into Dollar General's centralized timekeeping system, such as store preparation work, making bank deposits and picking up and delivering change, supplies, etc., and, without being compensated for such "off-the-clock" before shift work;

(b)     Being required, forced, induced, expected, encouraged, suffered and/or permitted to perform integral and indispensable closing shift duties <u>after</u> clocking out of Dollar General's centralized timekeeping system at the end of scheduled shifts, such as coordinating, processing, finalizing and submitting end-of-day reports, making bank deposits, picking up and delivering change, supplies, etc., and, without being compensated for such "off-the-clock" after shift work;

(c)     Being required, forced, induced, expected, encouraged, suffered and/or permitted to clock out of Dollar General's centralized timekeeping system <u>during</u> scheduled shifts to make bank deposits, and pick up and deliver change, supplies, etc., and receive and handle text messages, telephone calls, and other communications from employees, management members and customers, and without being compensated for such "off-the-clock" time; and,

(d)     Being required, forced, induced, expected, encouraged, suffered and/or permitted to clock out of Dollar General's centralized timekeeping system <u>during</u> scheduled shifts for thirty (30) minute meal breaks, when serving as the sole Manager on Duty and, without being compensated for such "off-the-clock" meal breaks.

22. At all relevant times, Dollar General has maintained a centralized timekeeping system for the purpose of recording work time of its non-exempt employees at its retail stores, nationwide.

23. Unpaid "off-the-clock" time of Plaintiffs and class members, as described in paragraph 21 above, were not recorded into Dollar General's centralized timekeeping system, during all times relevant.

24. Dollar General has maintained a common plan, policy and practice that prohibit its non-exempt Key-Holders from modifying their "off-the-clock" time and properly record such unpaid time into Dollar General's timekeeping system.

25. Dollar General also has a common plan and practice of discouraging its store managers from modifying any "off-the-clock" work time of non-exempt Key-Holders (such as Plaintiffs and class members) into its centralized timekeeping system, consistent with its practice of allowing, inducing and incentivizing such store managers to work Key-Holders "off the clock," as described in paragraph 21 above.

26. Dollar General does not provide any practical means or mechanisms by which non-exempt Key-Holders, such as Plaintiffs and class members, can complain or protest about their "off-the clock" work (such as described in paragraph 21 above), in part because they have been discouraged and intimidated from doing so by their store managers, as well as by their regional and district managers.

27. Plaintiffs and class members were subject to discipline, up and including termination of employment, if they refused to perform "off-the-clock" work (as described in paragraph 21 above).

28. Dollar General has had a common plan, practice and policy and, been aware that Plaintiffs and class members, when serving as "closing shift" Managers on Duty, were required to remain on store premises after clocking out of its centralized timekeeping system, in order to coordinate, process, finalize and submit "end-of-day" reports to its

corporate offices, given its possession of timekeeping, payroll and time-specific end-of-day reports relating to Plaintiffs and class members' <u>after</u> shift "off-the-clock" work. Yet, Dollar General failed to modify its said common plan, practice and policy or to edit such end-of-day "off-the-clock" work time into its centralized timekeeping system or take any other action to ensure they were compensated at the applicable straight time, minimum wage and overtime rates of pay for such "off-the-clock" work, as required by the FLSA and state law.

29. Moreover, Plaintiff and class members' store managers, regional and district managers, failed to modify and edit their other "off-the-clock" time (as described in paragraph 20) or take any other action to ensure they were properly compensated for other such "off-the-clock" time at the applicable straight time, minimum wage and overtime rates of pay, as required by the FLSA and state law, during all times relevant.

30. In sum, Dollar General's corporate labor budgets failed to account for proper compensation at the store level and Dollar General failed to monitor and investigate actual practices complained of herein, in the field, despite written companywide policies prohibiting "off-the-clock" work.

### "Off-The-Clock" Meal Breaks

31. Dollar General has maintained a common plan, policy and practice of requiring at least one Key-Holder to be the Manager on Duty and "in charge of its store" for the entirety of each store shift.

32. Under Dollar General's common "meal break policy and practice," non-exempt Key-Holders, such as Plaintiffs and class members, were required to clock-out of its centralized timekeeping system for a thirty (30) minute unpaid "off-the-clock" meal break

after working six (6) hours and, clock out of its centralized timekeeping system for an additional thirty (30) minute unpaid "off-the-clock" meal break after eight (8) hours of work, at all times relevant.

33. Plaintiff and class members, when serving as the sole Manager on Duty for their respective shifts, have been required to clock out of Dollar General's timekeeping system, remain on store premises and continue to be in charge of the store and responsible for its operations, during such respective thirty (30) minute and one-hour unpaid meal breaks, as well as to be subjected to perform and, perform their regular job duties for the entirety of such meal breaks; consisting of such job duties and operational responsibilities, *inter alia*, as:

   (a)    Continuously "watching the store" for possible customer and/or employee needs;

   (b)    Continuously "watching the store" for possible customer and/or employee theft;

   (c)    Continuously "watching the store" for any safety concerns;

   (d)    Continuously "watching the store" to observe employees' performances;

   (e)    Coordinating employees' breaks;

   (f)    Observing parking lot activities;

   (g)    Ensuring proper stocking of store merchandise;

   (h)    Coordinating the replacement of "no show" employees;

   (i)    Answering employee questions about store issues and policies;

   (j)    Coordinating with vendors and suppliers;

   (k)    Addressing employee complaints and concerns;

(l)     Resolving customer complaints and concerns;

(m)     Addressing maintenance issues that arise;

(n)     Responding to phone calls and other communications from management members;

(o)     Correcting and recording cash register mistakes;

(p)     Replacing, "counting down" and changing cash in registers;

(q)     Coordinating and processing "cash picks";

(r)     Coding-in, opening and closing cash registers to process "Void" sales;

(s)     Communicating with employees and customers about "Void" sales;

(t)     Coding-in, opening and closing cash registers to process "Returns";

(u)     Communicating with employees and customers about such "Returns";

(v)     Monitoring each operational activity within the store premises to ensure compliance with Dollar General's policies and standards; and,

(w)     Being available, accessible, vigilant, "on call" and "on wait" for the entirety of such meal breaks relative to the above job duties and responsibilities.

34. Plaintiffs and class members, when the sole Manager on Duty, essentially performed the same job duties and were responsible for the same store operations during their unpaid "off-the-clock" meal breaks as during all other parts of their shifts. (On some occasions, they were the only employee at the store during their unpaid "off-the-clock" meal break).

35. Dollar General routinely and regularly audited its timekeeping system and payroll records and, had access to the schedules of non-exempt Key-Holders, such as those of Plaintiffs and class members, when serving as the sole Manager on Duty. Nonetheless, Dollar General took no action to modify their timekeeping records to include such "off-the-

clock" meal breaks into its centralized timekeeping system. Nor did Dollar General take any other action to ensure they would be compensated for such "off-the-clock" meal time at the applicable straight time, minimum wage and overtime rates of pay, as is required by the FLSA and state laws.

36. Dollar General's common plan and practice required Plaintiffs and class members to be in charge of the store at which they worked and responsible for its operations for the entirety of each shift, including thirty the respective thirty (30) minute and one-hour unpaid meal breaks, when serving as the sole Manager on Duty of such shift, during all times relevant

37. Dollar General did not prohibit Plaintiffs and class members from performing their regular job duties and operational responsibilities during their unpaid "off-the-clock" meal breaks, at all times relevant.

38. Dollar General has failed to ensure that unauthorized work had not been performed by Plaintiffs and class members during their "off-the-clock" meal breaks at all times relevant.

39. Plaintiffs and class member were subject to disciplinary action, including up to termination of their employment, if they refused or failed to perform their regular job duties (of being in charge of the store and responsibly of its operations) during their "off-the-clock" meal breaks, when serving as the sole Manager on Duty at their respective stores, at all times relevant.

40. The net effect of Dollar General's common plan, policy and practice of not paying Plaintiffs and class members for all work performed, including all overtime work performed, was a scheme to save payroll costs and payroll taxes and, stay within its

budgeted labor cost for each of its stores, all for which it has unjustly enriched itself and enjoyed ill gained profits at the expense of Plaintiffs and other members of the class.

**Dollar General Failed to Keep Accurate Time Records**

41. Dollar General failed to accurately record all hours worked by its Plaintiffs and class members as required by the FLSA, 29 C.F.R. §516.2(a)(7).

42. By its failure to record accurately all compensable time worked by Plaintiffs and class members (during all times relevant), Dollar General willfully failed to compensate them for all such time at the applicable straight time, minimum wage and overtime rates of pay, as required to the FLSA and state laws.

43. Dollar General knew, and was aware at all relevant times, that it was not recording all of Plaintiffs and class members' work hours.

44. Dollar General's common plans, policies and practices of not compensating Plaintiffs and class members for all hour worked at the applicable straight time, minimum wage and overtime rates of pay violated the provisions of the FLSA, 29 U.S.C. § 207(a)(1).

45. Plaintiffs and class members were subject to and, victims of, Dollar General's centralized and uniform plans, policies and practices of strictly enforcing restricted hours of compensable work (budgeted labor).

46. Dollar General knew its centralized and uniform plans, policies and practices (schemes), as aforementioned, would require its management personnel to work Plaintiffs and class members "off the clock".

47. As a result of Dollar General's improper and willful failure to pay Plaintiffs and class members in compliance with the requirements of the FLSA (as well as in compliance

with its own policies), Plaintiffs and class members have suffered lost wages in terms of lost straight time, minimum wage and overtime compensation as well as other damages.

## FLSA COLLECTIVE ACTION ALLEGATIONS

48. Plaintiffs bring this case as a collective action on behalf of themselves and other similarly situated individuals pursuant to 29 U.S.C. § 216(b) to recover unpaid straight time wages, unpaid minimum wages, unpaid overtime compensation, liquidated damages, statutory penalties, attorneys' fees and costs, and other damages owed.

49. The proposed collective class of similarly situated persons is defined as:

All current and former non-exempt Key-Holders (Assistant Store Managers and Lead Sales Associates) employed by Dollar General Corporation who, as sole Managers on Duty, were required to clock-out of Dollar General's timekeeping system for thirty unpaid meal breaks without being fully relieved of all job duties and, who were otherwise required to work "off-the-clock" before, during and after their scheduled shifts within the three (3) years preceding the filing of this action at any Dollar General retail store located in the United States.[1]

50. Plaintiffs seek to pursue their unpaid "off-the-clock" wage claims against Dollar General on behalf of themselves, individually, and on behalf of themselves and all class members as a class.

---

[1] Plaintiffs reserve the right to amend the Class Description upon the discovery of additional facts.

51. Plaintiffs and class members are "similarly situated" as the term is defined in 29 U.S.C. §216(b) because, *inter alia*, Dollar General employed a centralized timekeeping system nationwide that resulted in a failure to pay Plaintiffs and class members for all hours worked, as mandated by the FLSA.

52. Moreover, this action is properly maintained as a collective action because Plaintiffs are similarly situated to the members of the collective class with respect to Dollar General's timekeeping, payroll and operational plans, policies and practices. Plaintiffs and the collective class were subjected to Dollar General's aforementioned centralized and uniform plans, policies and practices of encouraging, suffering or permitting, expecting and/or requiring its management personnel to work Plaintiffs and those similarly situated "off the clock" before, during and after their scheduled shifts, for reasons hereinbefore described.

53. The collective action mechanism is superior to other available methods for a fair and efficient adjudication of this controversy. Dollar General has acted or refused to act on grounds generally applicable to class members. The prosecution of separate actions could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Dollar General, place a substantial and unnecessary burden on the courts and/or substantially impair the ability of class members to protect their interests.

54. Plaintiffs Huffman, Hubbard, Beaver and Jimenez will fairly and adequately protect the interests of the class as their interests are in complete alignment with those of class members, i.e. to prove and then eradicate Dollar General's unlawful practices of failing to

pay applicable straight time, minimum wage and overtime compensation to its non-exempt Key-Holders, such as Plaintiffs and class members for performing "off-the-clock" work, as hereinbefore described.

55. Counsel for Plaintiffs will adequately protect the interests of Plaintiffs Hubbard, Huffman, Beaver and Jimenez as well as that of all class members.

56. Dollar General required, forced, induced, expected, encouraged and, suffered and permitted Plaintiffs and the collective class to work "off-the-clock,"(as hereinbefore described) within weekly pay periods at all times relevant, including more than forty (40) hours per week of such "off-the-clock" work, without being paid applicable straight time wages, minimum wage and overtime compensation for such work, in violation of the FLSA.

57. Dollar General knew Plaintiffs and the collective class performed work that required additional straight time, minimum wage and overtime compensation to be paid. Nonetheless, it operated under the aforementioned centralized and uniform plans, policies and practices (schemes) to deprive Plaintiffs and the collective class of such straight time wages, minimum wage and overtime compensation.

58. Dollar General's conduct, as alleged herein, was willful and has caused significant damage to Plaintiffs and the collective class.

59. Dollar General conduct was not in good faith by its failure to compensate Plaintiffs and the class members for all hours worked at the FLSA applicable straight time, minimum wage and overtime compensation rates of pay, as required by the FLSA.

60. Therefore, Dollar General is liable to Plaintiffs and the class members under the FLSA for failing to properly compensate them for all hours worked within weekly pay periods during all relevant times herein.

61. Plaintiffs request this Court to authorize notice to the members of the collective class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid straight time, minimum wage and overtime compensation as well as liquidated damages under the FLSA, and the other relief requested herein.

62. Plaintiffs estimate there are several thousand members of the collective class. The precise number of collective class members can be easily ascertained by examining Dollar General's payroll, scheduling, timekeeping, personnel and other work-related records and documents. Given the composition and size of the class, members of the collective class may be informed of the pendency of this action directly via U.S. mail, e-mail and by posting notice in each Dollar General store.

63. Plaintiffs and class members' unpaid wage claims for the aforementioned "off-the-clock" work easily can be determined by an examination of Dollar General's payroll, scheduling, timekeeping, personnel and other such work-related records and documents.

## RULE 23 CLASS ALLEGATIONS

**Illinois Class:**

64. Plaintiffs Hubbard and Huffman bring this action on behalf of the following class of persons:

> All current and former non-exempt Key-Holders (Assistant Store
>
> Managers and Lead Sales Associates) of Dollar General who, as

sole Manager on Duty, were required to clock-out of Dollar General's timekeeping system for unpaid minute meal breaks without being fully relieved of all job duties and, who were required to work "off-the-clock" before, during, and after their scheduled shifts at any time during the three years since the filing of this Complaint up to and including the date of final judgment in this matter, and who is a Named Plaintiff or elect to opt-in to this action pursuant to the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et. seq.* (Collectively, "the IL Rule 23 Class").[2]

65. Plaintiffs and the class bring causes of action as Counts IV, V, and VI, Illinois Wage and Hour claims, under Rule 23, on behalf of themselves and all similarly situated current and former non-exempt key holders employed at Dollar General retail stores in Illinois serving as sole Managers on Duty, between April 27, 2014, which is three years prior to the filing of this Complaint, and the date of final judgment in this matter ("IL Rule 23 Class").

66. Excluded from the IL Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the IL Rule 23 Class.

---

[2] Plaintiffs reserve the right to amend the Class Description prior to certification if additional facts are discovered.

67. The members of the IL Rule 23 Class ("IL Rule 23 Class Members") are readily ascertainable from Defendants' payroll records.

68. The IL Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

69. Upon information and belief there are more than five hundred (500) IL Rule 23 Class Members.

70. Plaintiffs' claims are typical of those claims which could be alleged by any IL Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each IL Rule 23 Class Member in separate actions.

71. All the IL Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wages, failing to pay overtime, and failing to pay for off-the-clock work.

72. Plaintiffs and the IL Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*., and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et. seq*.

73. Plaintiffs and the IL Rule 23 Class Members have all been injured in that they have been uncompensated due to Defendants' common policies, practices, and patterns of conduct.

74. Plaintiffs are able to fairly and adequately protect the interests of the IL Rule 23 Class Members and have no interests antagonistic to the IL Rule 23 Class Members.

75. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

76. A class action is superior to other available methods for the fair and efficient adjudication of the controversy–particularly in the context of wage and hour litigation–where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

77. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

78. Because the losses, injuries, and damages suffered by each of the individual IL Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual IL Rule 23 Class Members to redress the wrongs done to them.

79. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

80. The prosecution of separate actions by individual IL Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual IL Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the IL Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.

81. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

82. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

83. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

84. Common questions of law and fact exist as to the IL Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

    a. whether Defendants violated the IMWL and the IWPCA, and the

    b. whether Defendants employed Plaintiffs and the IL Rule 23 Class within

    c. whether Defendants properly compensated Plaintiffs and the IL Rule 23 Class for hours worked, including those in excess of forty (40) hours per workweek;

    d. whether Defendants maintained a policy or practice of requiring, suffering, or permitting Plaintiffs and the IL Rule 23 Class to work off-the-clock without proper compensation under Illinois law; and

e. the nature and extent of class-wide injury and the measure of damages for those injuries.

**Tennessee Class:**

85. Plaintiffs Beaver and Jimenez bring this action on their own, on behalf of themselves, individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following class of individuals:

> All current and former non-exempt Key-Holders (Assistant Store Managers and Lead Sales Associates) who were employed by Dollar General who, as sole Manager on Duty, were required to clock-out of Dollar General's timekeeping system for unpaid meal breaks without being fully relieved of all job duties and, who were required to work "off-the-clock" before, during, and after their scheduled shifts during the six (6) years preceding the filing of this action and, who were not compensated for all hours worked at any Tennessee Dollar General retail store within such period of time. ("class period").[3]

86. Plaintiffs Beaver and Jimenez are members of the Tennessee class they seek to represent under Rule 23 of the Federal Rules of Civil Procedure in this action.

---

[3] Plaintiffs reserve the right to amend the Class Description prior to certification if additional facts are discovered.

87. The Tennessee Class is sufficiently numerous that joinder of all members is impractical, thereby satisfying Federal Rule of Civil Procedure 23(a)(1). There are hundreds of class members during the class period.

88. All members of the class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). That is, all members of the Tennessee Class share the questions of: (1) whether and to what extent did Dollar General fail to compensate them for all the hours they performed during the class period; (2) whether and to what extent such unpaid hours include hours worked over forty (40) within any weekly pay period of the class period; (3) whether and to what extent such hours over forty (40) within any weekly pay period of the class period were compensated at one and one-half times their regular hourly rate of pay; (4) whether Dollar General's actions relating to the above constituted unjust enrichment; (5) whether Dollar General's actions relating to the above constituted a breach of contract; and, (6) whether Dollar General's actions relating to the above constituted a violation of the Tennessee Wage Regulation Act (Tenn. Code Ann. 50-2-103(h)).

89. Plaintiffs Beaver and Jimenez's unpaid wage claims are typical of the claims of the Tennessee Class, thereby satisfying Federal Rule of Civil Procedure 23(a)(3). Dollar General's failure to pay for all hours worked was not the result of any Plaintiff-specific circumstances. Instead, Dollar General's failure to compensate class members for all hours worked arose from its common compensation and payroll policies and practices,

which it applied to Plaintiffs and other Tennessee Key-Holders at its retail stores in the state during the class period.

90. Plaintiffs Beaver and Jimenez will fairly and adequately represent and protect the interests of the Tennessee Class. Further, they have retained competent legal counsel experienced in representing classes of employees against their employers related to their claims of unpaid wages under the law, thereby satisfying Federal Rule of Civil Procedure 23(a)(4).

91. By constantly and continuously failing to pay its non-exempt Key-Holders, such as Plaintiffs and class members, for all hours worked during the class paid, Dollar General has created a scenario where questions of law and fact common to Tennessee class members predominate over any questions affecting individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Consequently, Plaintiffs Beaver and Jimenez are entitled to pursue their Tennessee state law claims as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3).

## COUNT I

**(Violations of the Fair Labor Standards Act – Minimum Wage and Overtime)**

92. Plaintiffs incorporate by reference all preceding paragraphs as fully as if written herein.

93. At all relative times, Plaintiffs and class members have been entitled to the rights, protections, and benefits provided under 29 U.S.C. §§.201, *et seq.*

94. At all relevant times, Dollar General has been an employer engaged in interstate commerce consistent with 29 U.S.C. §.206(a) and 207(a).

95. At all relevant times, Dollar General employed Plaintiffs and each of the collective action class members consistent with the terms of the FLSA.

96. At all relevant times, Dollar General was an "employer" under the Fair Labor Standards Act.

97. At all relevant times, Plaintiffs and class members were employees of Dollar General within the meaning of the FLSA's straight wage, minimum wage and overtime wage requirements.

98. Plaintiffs and other class members have been similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b) at all relevant times.

99. As a result of Dollar General's common compensation practices of working Plaintiffs and class members "off-the-clock", as hereinbefore described, Plaintiff and class members were not paid straight time, minimum wage and overtime compensation, as required by the FLSA.

100. Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week. Pursuant to 29 C.F.R. § 778.315, compensation for hours worked in excess of forty (40) hours per week may not be considered paid to an employee unless that employee is compensated for all such overtime hours worked.

101. Through its actions, policies and practices, Dollar General violated the FLSA by regularly and repeatedly failing to compensate Plaintiffs and similarly situated individuals for all actual hours worked, including all overtime hours worked.

102. The foregoing actions of Dollar General violated the FLSA.

103. Dollar General's actions were willful with reckless disregard of clearly applicable FLSA provisions.

104. Dollar General's actions were not in good faith.

105. As a direct and proximate cause of Dollar General's unlawful conduct, Plaintiffs and similarly situated employees have suffered and will continue to suffer a loss of income and other damages.

106. Therefore, Dollar General is liable to Plaintiffs and other members of the class for actual damages, liquidated damages and equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

## COUNT II

### (Tennessee Breach of Contract Claims)

107. All previous paragraphs are incorporated as though fully set forth herein.

108. Plaintiffs Beaver and Jimenez bring this claim on behalf of themselves, individually, and on behalf themselves and members of the Tennessee Class.

109. Plaintiffs Beaver and Jimenez and, the Tennessee class members, entered into unilateral employment agreements with Dollar General whereby they agreed to perform work for Dollar General in exchange for being compensated for all hours worked.

110. Under the terms of Dollar General's Employee Handbook, applicable to Plaintiffs and class members, at all times relevant, Dollar General promised and implicitly guaranteed that all hours worked by them would be paid, stating specifically: "You must be paid for all hours worked. In, addition, you must be paid for all hours worked within the week the hours were actually worked."

111. The agreements were made between parties capable of contracting and contained mutual obligations and valid consideration.

112. Plaintiffs Beaver and Jimenez and, members of the Tennessee Class, have performed all conditions precedent, if any, required of them under these agreements.

113. Dollar General has refused and failed to perform its obligations in accordance with the terms and conditions of the aforementioned agreements by failing to pay Plaintiffs and the Tennessee class members for all time worked on behalf of Dollar General.

114. Dollar General's failure to pay Plaintiffs and members of the class all hours worked during all relevant periods herein also constitutes a violation of the Tennessee Wage Regulation Act.

## COUNT III

### (Tennessee Unjust Enrichment Claims)

115. All previous paragraphs are incorporated as though fully set forth herein.

116. Plaintiffs Beaver and Jimenez bring this claim on behalf of themselves, individually, and on behalf themselves and all members of the Tennessee Class in the alternative to Count II.

117. Under the Tennessee Wage Regulation Act, (Tenn. Code Ann. 50-2-103(h)), Dollar General is/was obligated to pay Plaintiffs Beaver and Jimenez and the Tennessee class members for all time worked.

118. Plaintiffs and Tennessee members who performed "of-the-clock" work for Dollar General during the relevant period, as hereinbefore described, but who worked less than forty (40) hour within weekly pay periods, conferred a benefit upon Dollar General by working on its behalf without being provided compensation.

119. Because the FLSA only covers those employees who work more than forty (40) hours per week (other than for minimum wage violations), Plaintiffs and Tennessee class members who performed "off-the-clock" work, as hereinbefore described, but who worked less than forty (40) hours within weekly pay periods when employed by Dollar General have no adequate remedy under the FLSA to be compensated for such work.

120. Dollar General had an appreciation of knowledge of the benefit conferred upon it by Plaintiffs and the Tennessee class members.

121. Nonetheless, Dollar General has accepted and retained the benefit of Plaintiffs and class members' labor under such circumstances as to make it inequitable for it to retain the benefit without payment for its value.

122. Dollar General has been unjustly enriched as a result of its accepting the work of Plaintiffs and the Tennessee Class without proper compensation for all time worked. Thus, it would be unjust to allow Dollar General to enjoy the fruits of the labor of Plaintiffs and Tennessee class members without properly compensating them for such labor. Dollar General therefore is liable to Plaintiffs and the Tennessee class members for the value of such benefit it has received from the fruits of their labor during the relevant period herein.

123. This action is properly maintained as a class action under Rules 23(a) and (b) because:

(a)     The class is so numerous that joinder of all members is impracticable;

(b)     There are questions of law or fact that are common to the class;

(c)     The claims or defenses of the Named Plaintiffs are typical of the claims or defenses of the class; and,

(d)     The Named Plaintiffs will fairly and adequately protect the interests of the class.

**Numerosity**

124. The total number of putative class members is in excess of five hundred (500) individuals. The exact number of class members may easily be determined from Defendants' payroll records.

**Commonality**

125. There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Tennessee class in that Plaintiffs and all members of the class have been harmed by Defendants' failure to compensate current and former Key Holder employees at the applicable minimum wage rate for all time worked in under forty (40) hours as well as at the applicable overtime wage rate for all hours in excess of forty (40), in given workweeks during the statutory period. The common questions of law and fact include, but not limited to the following:

(a) Whether Defendants failed to keep true and accurate records of the amount of time Plaintiffs and the class actually worked;

(b) Whether Plaintiffs were paid the applicable minimum wage rate for all hours worked under forty (40) in given workweeks during the statutory period;

(c) Whether Plaintiffs were paid for all hours worked in excess of forty (40) in given workweeks during the statutory period; and,

(d) Whether Plaintiffs suffered damages and the proper measure of those damages.

126. Plaintiffs anticipate that Defendants will raise defenses that are common to the class.

**Adequacy**

127. The Named Plaintiffs will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and class members.

128. Plaintiffs, moreover, have retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel specifically for wage and hour litigation.

**Typicality**

129. The claims asserted by the Named Plaintiffs are typical of the class members they seek to represent. The Named Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

130. Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

**Predominance and Superiority**

131. The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

132. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantial and substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

## COUNT IV

## ILLINOIS MINIMUM WAGE LAW VIOLATIONS – MINIMUM WAGES

### (On Behalf of the IL Rule 23 Class)

133. Plaintiffs, on behalf of themselves and other members of the class, repeat and re-allege Paragraphs 1 through 131 above as if they were fully set forth herein.

134. This count arises from Dollar General willful violation of the Illinois Minimum Wage Law, 820 ILCS 105/1. *et seq*., for Dollar General failure to pay Plaintiffs and the class of Key Holder employees that they represent all their earned minimum wages and overtime compensation. Plaintiffs and the class are current and former employees of Dollar General who are due, and who have not been paid, minimum wages and overtime wages, under the provisions of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*. Plaintiffs bring this Count III as a class action under 735 ILCS 5/2-801.

135. Plaintiffs and other similarly-situated employees worked as Key Holder employees.

136. Defendants were required to pay Plaintiffs and the IL Rule 23 Class the full minimum wage at a rate of $8.25 per hour for all hours worked as specified throughout this Complaint, April 25, 2014 to the present under the IMWL, 820 ILCS 105/4.

137. Dollar General practices violate the minimum wage provisions of the IMWL and the FLSA.

138. This action is properly maintained as a class action under Rules 23(a) and (b) because:

    (a)    The class is so numerous that joinder of all members is impracticable;

    (b)    There are questions of law or fact that are common to the class;

    (c)    The claims or defenses of the Named Plaintiffs are typical of the claims or defenses of the class; and,

    (d)    The Named Plaintiffs will fairly and adequately protect the interests of the class.

## Numerosity

139. The total number of putative class members is in excess of five hundred (500) individuals. The exact number of class members may easily be determined from Defendants' payroll records.

## Commonality

140. There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the IMWL class in that Plaintiffs and all members of the class have been harmed by Defendants' failure to compensate current and former Key Holder employees at the applicable minimum wage rate for all time worked in under forty (40) hours as well as at the applicable overtime wage rate for all hours in excess of

forty (40), in given workweeks during the statutory period. The common questions of law and fact include, but not limited to the following:

(a) Whether Defendants failed to keep true and accurate records of the amount of time Plaintiffs and the class actually worked;

(b) Whether Plaintiffs were paid the applicable minimum wage rate for all hours worked under forty (40) in given workweeks during the statutory period;

(c) Whether Plaintiffs were paid for all hours worked in excess of forty (40) in given workweeks during the statutory period; and,

(d) Whether Plaintiffs suffered damages and the proper measure of those damages.

141. Plaintiffs anticipate that Defendants will raise defenses that are common to the class.


## Adequacy

142. The Named Plaintiffs will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and class members.

143. Plaintiffs, moreover, have retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel specifically for wage and hour litigation.

## Typicality

144. The claims asserted by the Named Plaintiffs are typical of the class members they seek to represent. The Named Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

145. Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

## **Predominance and Superiority**

146. The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

147. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantial and substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means

of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

148. Plaintiffs seek to certify this Count IV and Count V violations of the overtime provisions of the IMWL, and Count VI, violation of the Illinois Wage Payment and Collection Act, as a class action and ask the Court to determine the rights of the classes pursuant to those statutes, and any other damages due, and to direct Dollar General to account for all back wages, penalties and prejudgment interest thereon due to the Plaintiffs and the IL Rule 23 Class that they represent.

149. Counts IV, V, and VI are brought pursuant to 735 ILSC 5/2-801 because the class members similarly situated to Plaintiffs are so numerous that jointer of all members is impracticable. Plaintiffs therefore bring this action on their own behalf as aggrieved employees, and in their representative capacity, against Dollar General. The individually named Plaintiffs and similarly-situated persons are equally affected by the minimum wage, maximum hour, and wage payment violations of Dollar General; and the relief sought is for the benefit of the individual Plaintiffs and the classes that Plaintiffs represent.

150. In sum, the issues involved in this lawsuit present common questions of law and fact. These common questions of law and fact predominate over the variations which may exist between members of the classes, if any. The individual Plaintiffs and the classes of similarly-situated persons on one hand, and Dollar General on the other, have a commonality of interest in the subject matter and remedy sought, namely back wages plus penalties, interest, attorneys' fees and the cost of this lawsuit. The individual Plaintiffs believe and assert that they are able to fairly and adequately represent and

protect the interests of the classes. If individual actions were required to be brought by each of the similarly-situated persons injured or affected, it would necessarily result in multiplicity of lawsuits, creating a hardship to the individuals and to the Court, as well as to Dollar General. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the classes are entitled.

151. The books and records of Dollar General are material to Plaintiffs' action as they disclose certain of the hours worked by each employee and the rate of pay for that week.

152. Dollar General violated the Illinois Minimum Wage Law by failing to compensate Plaintiffs and members of the class consistent with the minimum wage provisions.

153. Pursuant to 820 ILSC 105/12(a), affected employees are entitled to recover unpaid wages for three years prior to the filing of this suit, plus punitive damages in the amount of two percent (2%) per month at the amount of underpayment.

## COUNT V

## ILLINOIS MINIMUM WAGE LAW VIOLATIONS – OVERTIME WAGES

### (On Behalf of the IL Rule 23 Class)

154. Plaintiffs, on behalf of themselves and other members of the class, repeat and re-allege Paragraphs 1 through 152 above as if they were fully set forth herein, including paragraphs regarding the numerosity, typicality, adequacy, commonality, predominance, and superiority of the IL Rule 23 Class.

155. This Count V is brought by Plaintiffs on behalf of a class pursuant to 735 ILCS 5/2-801.

156. This Count arises from Dollar General willful violation of the Illinois Minimum Wage Law, 820 ILSC 105/1, *et seq.*, for its failure to pay Plaintiffs and the class of Key Holder

employees that they represent all their earned overtime pay for time worked in excess of forty (40) hours in individual workweeks. For all time worked in excess of forty (40) hours in individual workweeks, Plaintiffs and the class were entitled to be paid one and one half times the minimum hourly rate of pay. Plaintiffs and the class are current and former tipped employees of Dollar General who are due, and who have not been paid, all overtime wages under the maximum hour provisions of the Illinois Minimum Wage Law, 820 ILCS 105/4a.

157. Dollar General practices violate the overtime wage provisions of the IMWL and the FLSA.

## COUNT VI

## VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT

### Off the Clock

### (On Behalf of the IL Rule 23 Class)

158. Plaintiffs, on behalf of themselves and other members of the class, repeat and re-allege Paragraphs 1 through 157 above as if they were fully set forth herein, including paragraphs regarding the numerosity, typicality, adequacy, commonality, predominance, and superiority of the IL Rule 23 Class.

159. This Count VI is brought by Plaintiffs on behalf of a class pursuant to 735 ILCS 5/2-801.

160. Defendants have engaged in a widespread pattern, policy, and practice of violating the IWPCA, 820 ILCS 115/1, *et seq*., as detailed in this Complaint.

161. At all relevant times herein, Dollar General or Defendants were an "employer" as defined in the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et. Seq.*, and

Plaintiffs and similarly-situated persons were "employee(s)" within the meaning of that Act. Defendants were at all times aware of their obligation to pay its hourly employees for all time they worked, and is aware of the compensation actually paid to Plaintiffs and the class.

162. Dollar General agreed to compensate their employees, including Plaintiffs and the class of Key Holder hourly employees, for all time worked.

163. However, Dollar General instituted practices that resulted in its employees working certain time without compensation. That is, Dollar General worked Plaintiffs Huffman and Hubbard and the Illinois Class off-the-clock without compensation as hereinbefore described.

164. The wage provisions of Act 115 of the IWPCA apply to Defendant and protect Plaintiffs and the IL Rule 23 Class.

165. Dollar General practices violate the provisions of the IWPCA and the FLSA.

166. Accordingly, in addition to its failure to pay employees properly for all overtime worked, Dollar General violated the provisions of the IWPCA by failing to compensate Plaintiffs and the IL Rule 23 Class for all hours worked.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and class members request the Court to enter judgment in their favor on this Complaint and:

a. Award Plaintiffs and similarly situated employees all statutory and common law damages against Dollar General:

b. award Plaintiffs and similarly situated employees all unpaid wages, both overtime and non-overtime, against Dollar General.

c.  award Plaintiff and similarly situated employees for an amount equal to Plaintiffs' and collective class action members' unpaid back wages, pursuant to the applicable wage and overtime rates;

d.  find and declare that Dollar General's violations of the FLSA were willful and, accordingly, the three-year statute of limitations under the FLSA applies to this action;

e.  award Plaintiffs and members of the collective class liquidated damages in accordance with the FLSA;

f.  award prejudgment interest (to the extent that liquidated damages are not awarded);

g.  award Plaintiffs and the collective class reasonable attorneys' fees and all costs of this action, to be paid by Dollar General, in accordance with the FLSA;

h.  award pre-and post-judgment interest and court costs as further allowed by law;

i.  enter an Order designating this action as an Opt-In collective action under the FLSA and actionable for breach of contract and unjust enrichment claims under the Tennessee common law;

j.  enter an Order directing the issuance of notice to putative class members pursuant to 29 U.S.C. § 21(b) for the federal and state claims of the class;

k.  allow Plaintiffs to amend this Complaint, if necessary, as new facts are discovered;

l.  provide additional general and equitable relief to which Plaintiffs and the class may be entitled;

m.  judgment in the amount of all back wages due as provided by the Illinois Minimum Wage Law;

n.  prejudgment interest on the back wages in accordance with 815 ILCS 205/2 and punitive damages pursuant to the formula set forth in 820 ILSC 105/12(a);

o. reasonable attorneys' fees and costs of this action as provided by the Illinois Minimum Wage Law;

p. that the Court determine the rights of the parties and direct Defendants to account for all hours worked and wages paid to the class members during the temporality of the class; and

q. such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues.

Dated: April 26, 2017

Respectfully submitted,

*s/ Gordon E. Jackson*
Gordon E. Jackson (TN BPR #8323)
J. Russ Bryant (TN BPR #33830)
**JACKSON, SHIELDS, YEISER & HOLT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
*gjackson@jsyc.com*
*rbryant@jsyc.com*

**ATTORNEYS FOR PLAINTIFFS AND ON BEHALF OF OTHERS SIMILARLY SITUATED**